OPINION
Nathan L. Mitchell was found guilty by a jury in the Clark County Court of Common Pleas of murder and of attempted aggravated burglary, both with firearm specifications, and of improper discharge of a firearm into a habitation. Mitchell was sentenced to serve fifteen years to life for the murder, eight years each for the attempted aggravated burglary and the improper discharge of a firearm, and a three year term for the firearm specifications, all to run consecutively. He appeals from his conviction.
The state's evidence established the following.
Mitchell, Kevin Duncan, and John Hibbler sold illegal drugs in Springfield in the vicinity of South Fountain Avenue and Southern Avenue. Derrick Cade and Tammy Wells sold illegal drugs in the same neighborhood. Mitchell, Duncan, and Hibbler thought that Cade and Wells were infringing on their business and decided to "run them off the block" by stealing drugs, money, and guns from the home out of which Cade and Wells operated. To that end, they armed themselves and went to Cade and Wells' house in the early morning hours of October 20, 2000. Cade and Wells were asleep in an upstairs bedroom at the time, and several people were awake on the first floor of the house, including Wesley Robinson, a friend of Cade's. Mitchell and Hibbler kicked in the side door of the house and opened fire while Duncan guarded the front door to prevent any of the house's occupants from escaping. In response to the first shots, some of the people on the first floor of the house ran upstairs. Cade and Wells had been startled awake by the gunshots and did not know what was happening, but they heard people running up the stairs. Cade attempted to get dressed, grabbed his gun, and demanded to know who was coming up the stairs, but he got no response. When the bedroom door burst open, Cade fired, hitting Robinson in the chest. When the shooting stopped shortly thereafter, Cade and the others fled from the house and called the police and paramedics. Robinson died at the scene.
Mitchell was charged with murder and aggravated burglary, each with a firearm specification, and with improper discharge of a firearm into a habitation. As discussed supra, he was convicted of murder, attempted aggravated burglary, and improper discharge of a weapon, along with firearm specifications, and was sentenced accordingly.
Mitchell raises three assignments of error on appeal.
 I. APPELLANT WAS DENIED A FAIR TRIAL AND HIS RIGHT TO DUE PROCESS WHEN THE COURT FAILED TO GIVE ANY/OR AN ACCURATE 2923.03(D) JURY INSTRUCTION.
Mitchell claims that he was denied a fair trial because the trial court did not properly instruct the jury about accomplice testimony. Mitchell acknowledges that he did not object to the instructions that were given. Thus, we will consider only whether there was plain error.
Concerning accomplice testimony, R.C. 2923.03(D) provides that, if an alleged accomplice of the defendant testifies against the defendant about the crime in which they were complicit, the court shall instruct the jury that:
 The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
 It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.
The trial court did not give this instruction, but it did instruct the jury generally about its duty to evaluate the credibility of the witnesses and its province to determine what testimony is worthy of belief.
Plain error is recognized "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. To prevail, the defendant must show that the outcome of the trial "would clearly have been different" but for the error. State v. Carpenter
(1996), 116 Ohio App.3d 615, 621; State v. Hall (Sep. 24, 1996), Montgomery App. No. 17559, unreported. We are unpersuaded that the outcome of Mitchell's trial clearly would have been different if the jury had been given the R.C. 2923.03(D) instruction. The jury knew from Duncan's testimony that he had benefitted from agreeing to testify against Mitchell and that he had previously told a different story to the police. Thus, the jury had information from which to form a healthy skepticism about Duncan's testimony. Moreover, portions of Duncan's testimony were corroborated by other witnesses and by the forensic evidence. We cannot conclude that the jury created a manifest miscarriage of justice by crediting Duncan's testimony or the state's version of events. As such, we find no plain error.
The first assignment of error is overruled.
 II. APPELLANT'S RIGHT TO A FAIR TRIAL WAS DENIED BY THE COURT'S FAILURE TO ADMIT DEFENSE EXHIBIT "A" IN CONTRAVENTION OF OHIO EVIDENCE RULE 803(8).
Mitchell claims that the trial court erred in excluding Defense Exhibit "A," which was Detective Daniel Dewine's notes of his interview with Mitchell shortly after the shooting. Detective Dewine testified that he had used the notes to refresh his recollection of the interview. Mitchell claims that the notes were admissible pursuant to Evid.R. 803(8), the public records exception to the hearsay rule.
When the trial court ruled that Detective Dewine's notes would not be admitted, it stated that, because Dewine testified that he had used the notes to refresh his memory, the notes themselves were not evidence. When the jury asked whether it had "a copy of Detective Dewine's notes or a transcript of his full testimony," the court instructed that the notes themselves were not evidence "because the witnesses were able to testify from their memories after being refreshed by those notes." We agree with the trial court's conclusion that Detective Dewine's use of the notes did not make them evidence, and it was not error for the trial court to exclude them.
Moreover, Evid.R. 803(8) excepts from the general provision against hearsay any reports setting forth "matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, * * *." We are unaware of any duty that required Detective Dewine to make notes of his interview with Mitchell. Such notes are not records of a routine, intra-police, or machine-maintenance nature, which have been held to fall within the public records exception. See State v. Ward
(1984), 15 Ohio St.3d 355, 358. There is no evidence that Detective Dewine was required to take such notes or did so on a routine basis; the notes became important in this case simply because the device recording the interview had malfunctioned. "If the supplier of information is not under such a duty to do so, an essential link in Evid.R. 803(8)(b) is broken." State v. York (Oct. 8, 1996), Jackson App. No. 95CA767, unreported. Thus, Evid.R. 803(8) did not compel the admission of Detective Dewine's notes.
The second assignment of error is overruled.
 III. APPELLANT WAS DEPRIVED [OF] A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT.
Mitchell claims that the prosecutor deprived him of a fair trial by commenting on the veracity of the witnesses and by "impugning defense counsel's efforts."
In closing arguments, the prosecutor was blunt about the fact that many of the witnesses in the case were drug dealers, drug users, and criminals. These observations are wholly supported by the evidence. The prosecutor then built his argument on the ways in which the physical evidence and the consistencies in the witnesses' testimonies supported the state's theory of the case, notwithstanding the fact that the witnesses may have "shade[d] * * * their involvement" in the events. These comments were not improper. Moreover, the prosecutor's comment that the defense theory of the case — that Mitchell was not guilty because he did not fire the fatal shot — would require the jury to ignore the law of Ohio was a fair comment on Mitchell's assertion during closing argument that Cade, and not the trio that started the gunfight, should be held responsible for the death. The prosecutor did not act improperly.
The third assignment of error is overruled.
The judgment of the trial court will be affirmed.
FAIN, J. and GRADY, J., concur.